AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
MAR 06 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Facebook Inc., Menlo Park, CA, Facebook User IDs: https://facebook.com/100000179036261 and 100005923389044

Case No. '17MJ0677

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Northern District of California *(identify the person or describe property to be searched and give its location)*: see Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. § 952,960,963, and the application is based on these facts: See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Destani Esona, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/6/17

[signature]
*Judge's signature*

City and state: San Diego, CA

Jan M. Adler, United States Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>For records pertaining to Facebook user IDs:<br>https://facebook.com/100000179036261<br>and<br>https://facebook.com/100005923389044 | **Case Number:**<br><br>AFFIDAVIT OF SPECIAL AGENT DESTANI ESONA IN SUPPORT OF SEARCH WARRANT |

## AFFIDAVIT

I, Destani Esona, being duly sworn, declare and state:

## INTRODUCTION

1. This affidavit supports an application to search the following Facebook accounts associated with Elijah Lagda DELOSSANTOS ("E. DELOSSANTOS"):

a. "Elijah Delos Santos" (Phantom) aka https://www.facebook.com/elijah.delossantos.9, Facebook Account ID # 100000179036261 ("**Target Account 1**"); and

b. "Elijah Delos Santos" aka https://www.facebook.com/elijah.delossantos.7161, Facebook ID # 100005923389044") ("**Target Account 2**");

Collectively the "**Target Accounts**," and more particularly described in Attachment A, incorporated herein.

2. Based on the information below, I have probable cause to believe that the **Target Accounts** described in paragraph 1 and Attachment A constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United States Code, Section 922(g)(1), Felon in Possession of a Firearm;

and complaints which have yielded evidence of state and federal criminal violations.

7. I have become familiar with Facebook and other social media sites through my investigations. I have examined many Facebook profile pages and I have learned that they often use social media sites for communications in an effort to bypass law enforcements attempts to undercover their criminal activity. Based on my training, experience, and communications with other law enforcement officers, I have learned specific techniques in being able to identify suspects and associates even when they use fictitious names or aliases within social media sites.

## BACKGROUND

8. Facebook is a corporation that provides an online social networking service and is headquartered in Menlo Park, California. After registering to use the site, users can create a profile, add others users as "friends", exchange messages, post status updates and photos, share videos, use various apps and receive notifications when others update their profiles.

## FACTS SUPPORTING PROBABLE CAUSE

9. On October 12, 2016, agents conducted database queries on E. DELOSSANTOS and discovered the following criminal history:

a. On April 3, 2001, E. DELOSSANTOS was convicted for violating California Penal Code section 12020(A)(1) – manufacture/possessing dangerous weapon/etc. (San Diego County court case #SCE211534). E. DELOSSANTOS initially received probation and a jail sentence. On February 26, 2002, E. DELOSSANTOS' probation was revoked.

b. On March 7, 2002, E. DELOSSANTOS was convicted of a felony for violating California Penal Code section 12020(A)(1) – manufacture/possessing dangerous weapon/etc. (San Diego County court case #SCE211534). E. DELOSSANTOS received a 2-year prison sentence.

c. On August 9, 2005, E. DELOSSANTOS was convicted of a felony for violating California Vehicle Code section 2800.2(A) – evade peace officer: disregard safety (San Diego County court case #SCE251682). E. DELOSSANTOS received a 16-month prison sentence.

d. September 12, 2006, E. DELOSSANTOS was convicted of a felony for violating California Vehicle Code section 2800.2(A) – evade peace officer: disregard safety (San Diego County court case #SCE263924). E. DELOSSANTOS received a 2-year prison sentence.

10. A California Department of Motor Vehicles database query for E. DELOSSANTOS' driver's license (CDL #D2204751, Exp. 04/11/17) shows his current residential address listed as 9103 Valencia Street, Spring Valley, CA 91977.

**Facebook Postings**

11. On October 26, 2016, Special Agent Esona viewed E. DELOSSANTOS' Facebook account and found three pictures:

12. On May 1, 2012, E. DELOSSANTOS posted a picture of a San Diego Chargers jersey with the name "Phantom" on it, a handgun and two magazines. E. DELOSSANTOS titled the photo with "new toy!!!"

13. On May 2, 2012, E. DELOSSANTOS posted a picture of a firearm with the caption "Who's dat peeping in my window??" In the comment section below the picture, E. DELOSSANTOS writes "XD 40 caliber cuz! u no da real deal!!!" Agents believe this is a reference to a Springfield Armory, XD9102, .40 caliber pistol.

14. On April 22, 2013, E. DELOSSANTOS posted a picture of himself holding two handguns, a bandana covering his face with a San Diego hat and a Chargers flag in the background. A Facebook friend, Amalysia AREOLA, writes "Beretta and glock, nice combo."

15. On May 10, 2013, E. DELOSSANTOS posted another picture with him pointing two handguns at the camera. E. DELOSSANTOS is covering his face with a bandana and is wearing a San Diego hat with the Chargers flag in the background.

**Database queries on E. DELOSSANTOS**

16. Agents conducted additional database queries and found police reports involving field interviews with E. DELOSSANTOS:

17. On June 29, 2011, E. DELOSSANTOS during a traffic stop, stated that he goes by the moniker "Phantom."

18. On April 21, 2014, E. DELOSSANTOS again admitted to Sheriff's deputy that he goes by the moniker "Phantom."

19. Agents reviewed E. DELOSSANTOS California driver's license #D2204751 (Exp. 04/11/2017), San Diego County Sheriff's Department booking record photos #29093262, and Facebook photos. Agents believe that the person in the Facebook photos is the same E. DELOSSANTOS associated with the SDCSD booking photo.

**Regina WOLGAMOTT, Suspected Straw Purchaser of Firearms**

20. On October 12, 2016, agents conducted a database query on E. DELOSSANTOS' residence, 9103 Valencia Street, Spring Valley, CA 91977 and found Regina Isabel WOLGAMOTT listed as a resident at the address.

21. A California Department of Motor Vehicles database query for WOLGAMOTT's driver's license (CDL#D2655467, Exp. 07/10/2019) shows her residential address listed as 9103 Valencia Street, Spring Valley, CA 91977.

22. Agents conducted database queries on WOLGAMOTT and discovered that she had no criminal history.

23. Additionally, agents found a Facebook post on E. DELOSSANTOS' page, dated July 10, 2011, and November 13, 2011, which shows a picture of

WOLGAMOTT. Agents also discovered Regina WOLGAMOTT's publicly viewed page. On April 13, 2014, WOLGAMOTT posted a picture of herself and her daughter. E. DELOSSANTOS was tagged in the picture by a comment from Amalysia Areola.

24. Based on this information, agents believe that the girlfriend in E. DELOSSANTOS' Facebook photo, WOLGAMOTT's Facebook photo, and the driver's license photo are the same person.

25. Agents ran a database query on WOLGAMOTT to see if she had any firearms registered to her name. The following firearms are registered to WOLGAMOTT: a Glock, model 21SF STD, .45 caliber pistol bearing serial number WRN095; and Springfield Armory, XD9102, .40 caliber pistol bearing serial number XD522240.

26. Agents noted that WOLGAMOTT purchased the Springfield Armory, XD9102, .40 caliber pistol on April 18, 2012. E. DELOSSANTOS posted on Facebook a picture of a handgun and noted that he had an XD .40 caliber pistol on May 2, 2015. Agents believe that the firearm posted on E. DELOSSANTOS' Facebook page is the same firearm purchased by WOLGAMOTT.

27. On December 2, 2016, agents conducted a Federal Firearms License check for WOLGAMOTT. The check indicated WOLGAMOTT does not have a license to ~~sale~~ sell firearms.

**Federal Search Warrant**

28. On January 27, 2017, agents served a search warrant at 9103 Valencia Street, Spring Valley, CA 91977 for Ricardo DELOSSANTOS, a convicted felon, and brother of E. DELOSSANTOS. Agents interviewed WOLGAMOTT at the residence and she confirmed that she and E. DELOSSANTOS resided there, that they shared a room, and that E. DELOSSANTOS had access to a firearms safe stored in the room.

29. Agents also seized two firearms and ammunition from the safe in the room WOLGAMOTT and E. DELOSSANTOS shared including: 1) a Springfield Armory, XD9102, .40 caliber pistol bearing serial number XD522240; 2) a Mre d'armes St. Etienne, Model 1892, 32 caliber revolver bearing serial number S 1899; 3) six rounds of 32 caliber ammunition that was loaded in the revolver; 4) one round of .45 caliber ammunition found in a magazine; 5) one round of .40 caliber ammunition found in a magazine; and 6) one loose round of 9 mm ammunition. Also, in a gun box next to the safe, agents recovered a Glock, Model 21SF, .45 caliber pistol bearing serial number WRN095, loaded with eight rounds of 45 caliber ammunition.

30. During an interview outside the residence, WOLGAMOTT admitted that she knew E. DELOSSANTOS served time in prison.

31. I believe E. DELOSSANTOS solicited WOLGAMOTT to purchase firearm(s) since E. DELOSSANTOS is prohibited from purchasing/possessing a firearm as documented through Facebook via posted pictures, videos, and conversations. Based upon the information provided, I believe E. DELOSSANTOS may possess or may have transferred firearm(s) through Facebook.

32. I further believe that E. DELOSSANTOS is utilizing other means to acquire and sell firearm(s) such as the internet and Facebook. I am requesting records from April 1, 2012, to February 13, 2017, because I believe I will discover further evidence of E. DELOSSANTOS' possession of firearm(s).

**PRIOR ATTEMPTS TO OBTAIN DATA**

33. The United States has downloaded posts, photographs, and information from public portions of the **Target Accounts**. However, as explained below, not all the information requested will be available through this method.

**GENUINE RISKS OF DESTRUCTION**

34. Based on my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills.

**SOCIAL NETWORKING SERVICE**

35. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

36. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

37. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

38. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

39. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

40. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will

include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

41. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

42. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

43. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

44. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

45. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but

cannot be viewed by people who visit the user's Facebook page.

46. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

47. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

48. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

49. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

50. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

51. Facebook also retains Internet Protocol ("IP") logs for a given user ID

or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

52. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

53. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who

used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

54. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

55. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not. It would be inappropriate and

impractical for federal agents to search the vast computer network of Facebook for the relevant accounts and then to analyze the contents of those accounts on the premises of Facebook. The impact on Facebook's business would be severe.

56. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, government-authorized persons will review that information to locate the items described in Section III of Attachment B.

57. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

58. Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic communications that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

59. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification, segregation, and extraction of data within the scope of this warrant.

**CONCLUSION**

60. Based on the foregoing, there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, § 922(g)(1) and Title 18 United States Code, Section 922(a)(6) will be found at the premises to be searched as provided in Attachment A.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Destani Esona
Special Agent, ATF

Subscribed and sworn to before me this 6th day of ~~February,~~ March, 2017.

United States Magistrate Judge

# ATTACHMENT A

This warrant applies to information following Facebook accounts associated with Elijah Lagda DELOSSANTOS ("E. DELOSSANTOS"):

a. "Elijah Delos Santos" (Phantom) aka https://www.facebook.com/elijah.delossantos.9, Facebook Account ID # 100000179036261 ("**Target Account 1**"); and

b. "Elijah Delos Santos" aka https://www.facebook.com/elijah.delossantos.7161, Facebook ID # 100005923389044") ("**Target Account 2**");

Collectively the "**Target Accounts**," that are stored at premises owned, maintained, controlled, or operated by Facebook LLC, Security Department-Custodian of Records, located at 1601 Willow Road, Menlo Park, CA 94025.

# ATTACHMENT B

I. Service of Warrant

The officer executing the warrant shall permit Facebook, as custodian of the computer files described in Section II below, to locate the files relevant to Attachment A, incorporated herein, and copy them onto removable electronic storage media and deliver the same to the officer or agent in the manner set forth in the Affidavit, incorporated herein.

II. Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a. All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

d. All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings;

friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f. All "check ins" and other location information;

g. All IP logs, including all records of the IP addresses that logged into the account;

h. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i. All information about the Facebook pages that the account is or was a "fan" of;

j. All past and present lists of friends created by the account;

k. All records of Facebook searches performed by the account;

l. All information about the user's access and use of Facebook Marketplace;

m. The types of service utilized by the user;

n. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

III. Information to be seized by the government

The search of the data supplied by Facebook pursuant to this warrant will be conducted by ATF as provided in the "Procedures For Electronically Stored Information" of the Affidavit submitted in support of this search warrant and will be limited to the period of April 1, 2012 to February 13, 2017, and to the seizure of:

a. Communications, records, posts, and attachments tending to discuss, depict, or establish the possession, purchase, sales, or receipt of firearms;

b. Communications, records, posts, and attachments tending to identify Elijah Lagda DELOSSANTOS and any co-conspirators involved in the activities in III(a);

c. Communications, records, posts, and attachments tending to discuss, depict, or establish the ownership, possession, dominion and control of the **Target Accounts**;

d. Communications, records, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts;

which are evidence of violations of Title 18, United States Code, Section 922(g)(1), Felon in Possession of a Firearm; and Title 18 United States Code, Section 922(a)(6), False Statement or Identification in Acquisition or Attempted Acquisition of a Firearm.